DARALYN J. DURIE (CA SBN 169825)
DDurie@mofo.com
JOSEPH C. GRATZ (CA SBN 240676)
JGratz@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

CAROLYN M. HOMER (CA SBN 286441)
CMHomer@mofo.com
KATHRYN C. THORNTON (*pro hac vice*)
KThornton@mofo.com
ADITYA V. KAMDAR (CA SBN 324567)
akamdar@mofo.com
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, D.C. 20037
Telephone: 202.887.1500
Facsimile: 202.887.0763

*Attorneys for Defendant*
SNAP INC.

*(Attorneys continued on next page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| TED ENTERTAINMENT, INC., MATT FISHER, GOLFHOLICS, INC., AND NICOLE CHMURA each individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SNAP INC.,<br><br>Defendant. | Case No. 2:26-cv-00754-AB-MBK<br><br>Judge: Hon. André Birotte Jr.<br><br>**DEFENDANT SNAP INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date: July 10, 2026<br>Time: 10:00 a.m.<br>Crtrm: 7B<br><br>Action Filed: January 23, 2026<br>Trial Date: None |

DEFENDANT'S MOTION TO DISMISS PLTFS'
CONSOLIDATED CLASS ACTION COMPLAINT

BENJAMIN J. FOX (CA SBN 193374)
bfox@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200
Fax: 213.892.5454

*Attorneys for Defendant*
SNAP INC

**TO ALL PARTIES HEREIN AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 10, 2026, at 10 a.m. or as soon thereafter as the matter may be heard before the Honorable Andre Birotte, Jr. in Courtroom 7B of the United States District Court for the Central District of California, Southern Division, Defendant Snap Inc. ("Defendant" or "Snap") will and hereby does move this Court to dismiss the sole count of the Consolidated Class Action Complaint.

## MOTION

Pursuant to Fed. R. Civ. P. 12(b)(6), Snap respectfully moves this Court for an Order dismissing Plaintiffs Ted Entertainment, Inc., Matt Fisher, Golfholics, Inc., and Nicole Chmura's ("Plaintiffs") Consolidated Class Action Complaint with prejudice. This motion is based on this Notice, the supporting Memorandum, and any other written or oral argument that Snap may present to the Court.

Snap's Motion to Dismiss should be granted because Plaintiffs' YouTube videos are accessible to the public through streaming. The Digital Millennium Copyright Act only prohibits the circumvention of access controls, which prevent viewing or perceiving the copyrighted works; the Act does not prohibit the circumvention of copy controls, which only prevent downstream reproduction or distribution. Because Plaintiffs allege that Snap downloaded copies of Plaintiffs' publicly available YouTube videos without authorization, they fail to state an access-control circumvention claim.

Pursuant to Local Rule 7-3, counsel for Defendant met and conferred with counsel for Plaintiffs on May 1, 2026, regarding the substance of this Motion.

Dated: May 11, 2026

**MORRISON & FOERSTER** LLP

By: */s/ Joseph C. Gratz*
Joseph C. Gratz
*Attorneys for Defendant*
SNAP INC.

**TABLE OF CONTENTS**

**Page**

I.    Introduction ........................................................................................... 7

II.   Background............................................................................................ 8

    A.    Snap Inc.................................................................................. 8

    B.    Plaintiffs ................................................................................ 9

    C.    YouTube's Anti-Download Technological Measures ........................ 10

III.  STATUTORY BACKGROUND ......................................................... 13

    A.    The DMCA's Limited Anti-Circumvention Protection..................... 13

        1.    DMCA's Access Controls ........................................... 14

        2.    DMCA's Copy Controls.............................................. 14

        3.    The DMCA Prohibits Circumvention of Access Controls, but Not Copy Controls............................................. 15

IV.  Legal Standard................................................................................... 18

V.   Argument ........................................................................................... 18

    A.    Plaintiffs' Claims Fail Because Their Works Are Freely Accessible ............................................................................. 19

    B.    Plaintiffs' Claims Fail Because They Allege Circumvention of YouTube's Copy Controls—not Access Controls............................ 22

        1.    Rolling Cipher ......................................................... 23

        2.    IP Blocking and Rate Limiting.................................... 25

        3.    Session-Bound, Short Lived URLs .............................. 26

        4.    CAPTCHA Challenges............................................... 26

        5.    Proof of Origin Tokens.............................................. 27

    C.    Plaintiffs Do Not Allege Sufficient Information on the Timing of YouTube's Technological Protections or Snap's Alleged Downloading .......................................................................... 28

VI.  Conclusion......................................................................................... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 18

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of California*,
No. 2:10–CV–09378–CBM, 2012 WL 7683452 (C.D. Cal. Nov. 20,
2012) ............................................................................................................ 21

*Baldain v. Am. Home Mortg. Serv. Inc.*,
No. CIV S–09–0931 LKK/GGH, 2010 WL 56143 (E.D. Cal. Jan. 5,
2010) ...................................................................................................... 18, 28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 18, 27

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994) .................................................................................... 16

*Couponcabin LLC v. Savings.com, Inc.*, No. 2:14-CV-39-TLS, 2016
WL 3181826 (N.D. Ind. June 8, 2016) .......................................... 20, 21, 26

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ............................................................ 14, 21, 22

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .................................................................... 18

*Hattler v. Ashton*,
No. CV16-04099 JAK(KSx), 2017 WL 11634742 (C.D. Cal. Apr.
20, 2017) ............................................................................................... *passim*

*Hosseinzadeh v. Klein*,
276 F. Supp. 3d 34 (S.D.N.Y. 2017) ........................................................... 17

*Johnson v. Rehman*,
No. 2:14-CV-01454-GEB-AC, 2014 WL 4986688 (E.D. Cal. Oct.
6, 2014) ....................................................................................................... 28

*Lasica v. American Online, Inc.* No. 15-cv-4230-GW(FFMx), 2015
WL 12791495 (C.D. Cal. Sept. 3, 2015) ..................................................... 21

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004) ...................................................................... 19

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) ................................................................ 18, 19

*NNG, KFT. v. AVA Enters., Inc.*,
No. 2:14-CV-00220 (ODW)(AJW), 2015 WL 5442725 (C.D. Cal. July 8, 2015) ........................................................................................... 17

*RealNetworks, Inc. v. Streambox, Inc.*,
No. 2:99-cv-2070, 2000 WL 127311 (W.D. Wash. Jan. 18, 2000) ............. 14, 15

*TD Ameritrade, Inc. v. Matthews*,
No 3:16-CV-00136-SLG, 2018 WL 3451463 (D. Alaska July 16, 2018) ......................................................................................................... 28

*United States v. Elcom Ltd.,* 203 F. Supp. 2d 1111, 1119 (N.D. Cal. 2002) ............................................................................................................ 17

*Zixiang Li v. Kerry*,
710 F.3d 995 (9th Cir. 2013) ...................................................................... 18

**Statutes**

17 U.S.C. § 106 ............................................................................................. 13

17 U.S.C. § 501 ............................................................................................. 16

17 U.S.C. § 107 ............................................................................................. 16

17 U.S.C. § 1201 ...................................................................................*passim*

**Other Authorities**

Fed. Rule Civ. Procedure 12(b)(6) ............................................................... 18

NII Copyright Protection Act of 1995: Hearing before Subcomm. On Courts and Intell. Prop., pt. 2 .................................................................... 16

Snap Inc. 10-K (Feb. 4, 2026), *available at* https://investor.snap.com/financials/sec-filings/default.aspx ........................ 9

S. Rep. No. 105-190 (1998) ("1998 Senate Judiciary Report") ..................... 14, 15

Statement of Members of the Digital Future Coalition on H.R. 2441 .................... 16

U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of Copyrights* (June 2017) ............................................................. 14, 16

U.S. Copyright Office Summary, the Digital Millennium Copyright Act of 1998 ("1998 USCO DMCA Summary") .................................. 13, 15, 17

DEFENDANT'S MOTION TO DISMISS PLTFS'      6
CONSOLIDATED CLASS ACTION COMPLAINT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.  INTRODUCTION

The Digital Millennium Copyright Act's anti-circumvention provision does not prohibit downloading public YouTube videos. The Court should therefore dismiss the Consolidated Class Action Complaint.

Plaintiffs allege unprecedented—and unfounded—anti-circumvention claims. Plaintiffs have chosen *not* to obtain copyright registrations from the U.S. Copyright Office and have chosen *not* to pursue copyright infringement claims against technology companies, like Snap, who they say copied their YouTube videos. Instead, Plaintiffs seek to bypass traditional copyright infringement elements and avoid affirmative defenses such as fair use.  While Plaintiffs' theory may appear novel, it was both anticipated and prohibited by the text of the Digital Millennium Copyright Act's (DMCA) anti-circumvention provision, 17 U.S.C. § 1201(a). That statute defines two types of controls: controls that "effectively control access" to a copyrighted work, meaning that they prevent a person from perceiving the work (an act not regulated by copyright law), and controls that "effectively protect[] a right of a copyright owner under this title" (known as "copy controls"), meaning that they prevent a person from engaging in acts that are regulated by copyright law, such as making copies.

The DMCA on its face distinguishes between access and copy controls, with different provisions, prohibitions, and causes of action for each. Congress narrowly tailored § 1201 to prohibit circumvention of a technological measure that "effectively controls access" to a copyrighted work but specifically chose not to prohibit circumvention of copy controls. *Compare* § 1201(a)(1)(A) with § 1201(b). Copying, after all, is governed by classic copyright infringement claims, which allow for fair use. Applying a blanket prohibition to the circumvention of copy controls would have prevented those lawful uses.

Plaintiffs admit that their alleged works are freely accessible and publicly

viewable on YouTube. Such access to Plaintiffs' works is allowed without overcoming any technological protection measures. Plaintiffs do not allege any access controls—password protection, authentication codes, license keys, encryption, or otherwise—that prevent anyone from watching their videos. Instead, the technological measures that Plaintiffs say Snap circumvented prevent at most the downloading and dissemination of copies. Consequently, Plaintiffs' asserted technological measures are copy controls—not access controls. More fundamentally, Plaintiffs have failed to allege that the technological measures identified in their Complaint were in place at the time Defendant Snap Inc. allegedly downloaded Plaintiffs' works. In view of this, the Court should dismiss Plaintiffs' claims.

## II.   BACKGROUND

### A.   Snap Inc.

Defendant Snap is an American technology company. Snap was founded in 2011 as a camera and communication platform.[1] Snap's flagship product, Snapchat, has hundreds of millions of daily active users. *Id.* Snap innovates and develops products at the cutting-edge of artificial intelligence and augmented reality. Plaintiffs allege that Snap offers text-to-video generative AI models that enable creators to generate short videos from text and image prompts, collectively referred to therein, and here, as "Snap AI Video." *See* Consolidated Class Action Complaint, ECF No. 36 ("CAC") ¶ 77 & n.4.

Plaintiffs allege that Snap accessed, scraped, and downloaded some of Plaintiffs videos from YouTube in order to train the Snap AI Video model. *E.g.*, CAC ¶ 4 (alleging Snap used tools to "enable[e] the mass unauthorized access and extraction of videos at scale necessary to train Snap AI Video"); ¶ 88 (alleging Snap "scrape[d] audiovisual content from YouTube" to train its generative AI model); ¶ 96 (alleging Snap "intentionally accessed large volumes of YouTube videos by scraping

---

[1] *See* Snap Inc. 10-K (Feb. 4, 2026), *available at* https://investor.snap.com/financials/sec-filings/default.aspx

DEFENDANT'S MOTION TO DISMISS PLTFS'   8
CONSOLIDATED CLASS ACTION COMPLAINT

and/or using tools and workflows to evade YouTube's TPMs and usage restrictions . . . to assemble training corpora for Defendant's AI models and services"). Plaintiffs also affirmatively allege that they authorized Snap (like all YouTube users) to access their videos. *Id.* ¶ 67 (YouTube's Terms of Service grant users of YouTube a license "to access content through YouTube's services").

Plaintiffs allege that Snap downloaded video files from YouTube based on a reference list of more than 3 million videos compiled by Microsoft Research Asia. *See* CAC ¶¶ 80, 83, 84. That list is known as the HD-VILA-100M dataset. *See id.* "HD-VILA-100M does not contain the video files themselves. Any user of the dataset must download each referenced clip directly from YouTube." *Id.* ¶ 86. Based on Snap's downloaded version of HD-VILA-100M, Plaintiffs allege that Snap then compiled its own "derivative dataset" known as Panda-70M. *See* CAC ¶¶ 80, 89, 92.

### B.    Plaintiffs

Plaintiffs are "content creators who upload their audiovisual content to YouTube." CAC ¶¶ 7, 32. That content is "intended for streaming on YouTube," *id.* ¶ 15, where the public can "watch and listen to videos for free." *Id.* ¶ 34. Plaintiffs do not allege they have registered any of their YouTube videos with the U.S. Copyright Office. *See id.* ¶ 12.

Ted Entertainment, Inc. ("TEI") is a media company that operates two YouTube channels: "h3h3 Productions" and "H3 Podcast Highlights." CAC ¶ 17. TEI has allegedly posted "over 5,800 original videos on YouTube, with a combined total of over 4 billion views." *Id.* The Complaint alleges that 431 of TEI's videos are referenced in HD- VILA-100M and 438 are referenced in Panda-70M. *Id.*

Matt Fisher is a California resident who uploads golf videos to YouTube. *Id.* ¶ 20. His videos allegedly have hundreds of millions of views, and his channel has over 500,000 subscribers. *Id.* The Complaint alleges that URLs corresponding to two of his videos appear in HD-VILA-100M and that eight of his videos are referenced

in Panda-70M. *Id.*

Golfholics is a California corporation that publishes videos, also about golf, on YouTube. *Id.* ¶ 22. Golfholics' videos allegedly have millions of views. The Complaint alleges that 62 of its videos are referenced in both HD-VILA-100M and Panda-70M. *Id.*

Nicole Chmura is a California resident who posts travel videos on YouTube. *Id.* ¶ 24. Chmura alleges one of her videos is included in HD-VILA-100M. *Id.*

### C.    YouTube's Anti-Download Technological Measures

Plaintiffs allege that YouTube employs five technological measures to prevent unauthorized downloads: (1) "rolling cipher," (2) "IP-based blocking and rate limiting," (3) "short-lived, session bound streaming URLs," (4) "CAPTCHA human-verification challenges," and (5) "proof-of-origin tokens." *E.g.*, CAC ¶¶ 35, 45. None of these technological measures prevent a user from visiting YouTube and streaming (that is, "accessing") Plaintiffs' works.

**Rolling Cipher.** YouTube's rolling cipher does not restrict access or otherwise affect the URL "for the webpage where the video playback occurs." CAC ¶ 51. Instead, it applies to the URL "for the video file itself that is played within the page" and allegedly "controls access [to Plaintiffs' Works] by requiring application of a specific computational process before the file can be obtained." *Id.* ¶¶ 50-51. Plaintiffs allege YouTube has two URLs for each work—one for the web page on which the video appears, and another for the underlying video file. *Id.* ¶ 51. The rolling cipher allegedly relies on a "complex and periodically changing algorithm" that "impedes an ordinary user *from creating a permanent, unrestricted download* of audiovisual content made available on YouTube only for streaming and restricted downloading." *Id.* (emphasis added). This measure is not alleged to prevent a user from *watching* a video in the ordinary course of YouTube's operation; instead, it is alleged to make *downloading* more difficult by hiding the URL of the underlying video file. *Id.*

DEFENDANT'S MOTION TO DISMISS PLTFS'    10
CONSOLIDATED CLASS ACTION COMPLAINT

**IP Blocking and Rate Limiting.** According to Plaintiffs, YouTube's IP-blocking and rate limiting revokes access *after* YouTube detects "excessive or abusive request patterns." CAC ¶ 53. Plaintiffs allege that YouTube "monitors the number and frequency of requests originating from individual IP addresses against defined thresholds" and once those undefined thresholds are exceeded, YouTube prevents that IP address from viewing or retrieving any further audiovisual content. *Id.* ¶ 54. This measure is not alleged to prevent a user from watching a video in the ordinary course of YouTube's operation; instead, it is alleged to operate only in situations of "excessive or abusive" operation.

**Session Bound Streaming URLs.** Plaintiffs also allege that YouTube issues "temporary, cryptographically signed" URLs with "authorized parameters such as expiration timestamps and client identifiers." CAC ¶ 56. These session-bound, short-lived URLs "limit[] when and from where YouTube's file may be requested." *Id.* *After* the session for the URL has expired, the server will not deliver the audiovisual file. *Id.* This measure is not alleged to prevent a user from watching a video in the ordinary course of YouTube's operation; instead, it is alleged to operate only to prevent a video file from being downloaded outside of the ordinary operation of a YouTube web page. *Id.*

**CAPTCHA.** Plaintiffs allege that "[w]hen traffic patterns indicate automated or suspicious activity, YouTube typically requires completion of a CAPTCHA challenge *before allowing further requests to proceed.*" CAC ¶ 58 (emphasis added). A CAPTCHA challenge seeks to distinguish human users from bots or automated activity. *Id.* "Until the challenge is successfully completed, the requesting client cannot stream the audiovisual work." *Id.* This measure is not alleged to prevent a user from watching a video in the ordinary course of YouTube's operation; instead, it is alleged to operate only when certain "suspicious" patterns of operation are detected.

DEFENDANT'S MOTION TO DISMISS PLTFS'      11
CONSOLIDATED CLASS ACTION COMPLAINT

**Proof of Origin Tokens.** Finally, Plaintiffs allege that YouTube "require[s] that all requests for video segments include cryptographic proof-of-origin tokens that validate the request as originating from an authorized YouTube playback environment." CAC ¶ 62. According to Plaintiffs, YouTube's "proof-of-origin tokens are generated exclusively within YouTube's authorized player environment." *Id.* ¶ 63. Without a successfully validated token, YouTube will not deliver the audiovisual file. *Id.* ¶¶ 54, 62. This measure is not alleged to prevent a user from watching a video in the ordinary course of YouTube's operation; instead, it is alleged to operate only to prevent a video file from being downloaded outside of the ordinary operation of a YouTube web page. *Id.*

Plaintiffs allege that the above measures are "technological processes and tools to detect and block access to files for unauthorized downloading." *Id.* ¶ 35. But as discussed above, none of these technological measures prevents the general public from viewing or streaming the videos in the first instance or in the ordinary course of YouTube's operation. *See e.g.*, CAC ¶¶ 51, 53, 56, 58, 63. Instead, Plaintiffs allege that a user may lose the ability to stream or download if YouTube's system detects automated or mass downloads. *See e.g.*, *id.* ¶¶ 53, 58.

Thus, Plaintiffs allege that although Snap was permitted to access and stream public video works on YouTube, Snap should not have been able to *download* permanent copies of the works' underlying digital files. *Id.* ¶ 156 (distinguishing "viewing a YouTube video through YouTube's authorized and playback mechanisms" and obtaining "access to the underlying file"); *see also id.* ¶ 69 (distinguishing value proposition of "[s]treaming through YouTube and downloading permanent copies"). Correspondingly, they base their claim not on Snap having accessed the videos by watching them (which they acknowledge anyone, including Snap, can do), but on Snap having downloaded the videos. *Id.* ¶ 156 (asserting Snap's "circumvention tools" obtained access "to the underlying file," thereby "triggering

DEFENDANT'S MOTION TO DISMISS PLTFS'          12
CONSOLIDATED CLASS ACTION COMPLAINT

liability under § 1201"); ¶ 70 ("scraping or bulk downloading is not merely copying . . . it is an act of unauthorized access"); ¶ 97 (alleging Snap "accessed the underlying audio and video files and downloaded those files"); ¶ 86 (alleging that by downloading clips of YouTube videos, Snap "triggered at least 100 million separate acts of unauthorized access and copying"); ¶ 154 (alleging that by "circumventing YouTube's technological barriers that effectively control access to extracted files… Defendant improperly obtained millions of the Videos from YouTube's platform").

In particular, Plaintiffs allege that Snap used yt-dlp, an open-source program that they allege "present[s] valid-appearing proof-of-origin credentials to YouTube's servers" in order to obtain "the requested audiovisual file." *Id.* ¶¶ 64, 99 (alleging yt-dlp "circumvent[s] the access controls YouTube uses to prevent unauthorized downloading"), ¶¶100-102.

But notwithstanding the label Plaintiffs apply to them, all of these measures are *copy* controls, designed to prevent *downloading* (individually or in bulk), not *access* controls, which would prevent the videos from being *viewed* at all.

As discussed next, Plaintiffs' purported distinction between public access to a YouTube video to watch it, and Snap's ability to download it, bears directly on the legal difference between access and copy controls under the Digital Millennium Copyright Act.

## III. STATUTORY BACKGROUND

### A. The DMCA's Limited Anti-Circumvention Protection

The Copyright Act grants copyright holders exclusive rights to control certain uses of their works (such as the rights of reproduction, distribution, and performance). 17 U.S.C. § 106. Designed for the digital age, the DMCA supplements the Copyright Act's existing protections by creating distinct causes of action to safeguard not the copyrighted works themselves, but rather the technological measures that protect those works. 17 U.S.C. § 1201; *see also* U.S. Copyright Office Summary, the Digital Millennium Copyright Act of 1998, pgs. 3–4 ("1998 USCO

DEFENDANT'S MOTION TO DISMISS PLTFS'          13
CONSOLIDATED CLASS ACTION COMPLAINT

DMCA Summary").[2] The DMCA affords different protections depending on whether the technological measure is an "access control" or a "copy control." § 1201.

### 1. DMCA's Access Controls

Under the DMCA, an access control is "a technological measure" that "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to *gain access to* the work." 17 U.S.C. § 1201(a)(3)(B) (emphasis added). Paradigmatic examples of access controls include "password requirement[s] limiting access to a website to paying customers" and "authentication codes." U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of Copyrights*, at 6 (June 2017).[3] Access controls limit access to the "plain text of the work," here – the expressive elements of the audiovisual content itself. S. Rep. No. 105-190, at 11 (1998) ("1998 Senate Judiciary Report").[4] Thus, technological measures that prevent someone from viewing video content or otherwise perceiving the expressive elements of a work are access controls. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 863–65 (9th Cir. 2017) (finding encryption mechanisms were access controls because they rendered videos unplayable except on players that already possessed the key necessary to decrypt the video content); *RealNetworks, Inc. v. Streambox, Inc.*, No. 2:99-cv-2070, 2000 WL 127311, at *2, 7 (W.D. Wash. Jan. 18, 2000) (finding an "authentication sequence which only RealServers and RealPlayers know" to be an access control because without the sequence, the server "does not stream the content it holds"). Plaintiffs have not alleged any access controls meeting the statutory definition; to the contrary, Plaintiffs admit that anyone is able to gain access to their videos and watch them on YouTube.

---

[2] Available at https://www.copyright.gov/legislation/dmca.pdf.

[3] Available at https://www.copyright.gov/policy/1201/section-1201-full-report.pdf.

[4] Available at https://www.govinfo.gov/content/pkg/CRPT-105srpt190/html/CRPT-105srpt190.htm.

DEFENDANT'S MOTION TO DISMISS PLTFS'
CONSOLIDATED CLASS ACTION COMPLAINT
14

### 2.    DMCA's Copy Controls

In contrast, a copy control is "a technological measure" that "in the ordinary course of its operation, prevents, restricts, or otherwise *limits the exercise of a right of a copyright owner* under this title," § 1201(b)(2)(B) (emphasis added), which includes the right of "reproduction" or copying. *Id.* § 106(1); *see also* 1998 USCO DMCA Summary at 4 (describing copy control as "technological measure that prevents copying"). Copy controls "allow some forms of 'access' but restrict other uses of the copyrighted work." *Hattler v. Ashton*, No. CV16-04099 JAK(KSx),2017 WL 11634742, at *6 (C.D. Cal. Apr. 20, 2017) (concluding that measures that permit a video to be watched on a web page but not downloaded are not access controls, only copy controls). For example, making media available only for streaming and not for download is a copy control because it "permits users to view or watch a copyrighted work but prevents them from downloading a permanent copy of the work." *Id.* (citing *RealNetworks, Inc.*, 2000 WL 127311, at *1–2). Thus, unlike access controls, copy controls "do[] nothing to prevent access to the plain text of the work, but [are] designed to prevent that work from being copied." 1998 Senate Judiciary Report at 11.

### 3.    The DMCA Prohibits Circumvention of Access Controls, but Not Copy Controls.

The DMCA treats access controls and copy controls differently. For access controls, the statute provides that "[n]o person shall" (1) "circumvent" an access control, 17 U.S.C. § 1201(a)(1)(A), or (2) "traffic in any technology, product, service, device, component, or part thereof, that is primarily designed or produced for the purpose of circumventing" an access control, *id.* § 1201(a)(2)(A). But for copy controls, section 1201(b) *does not prohibit circumvention*. Instead, section 1201(b) provides only that "[n]o person shall . . . traffic in any technology, product, service, device, component, or part thereof, that is primarily designed or produced for the

DEFENDANT'S MOTION TO DISMISS PLTFS'        15
CONSOLIDATED CLASS ACTION COMPLAINT

purpose of circumventing" a copy control. *Id.* § 1201(b)(1)(A). In other words, the DMCA's *device trafficking* prohibitions apply to both access controls and copy controls, but its *circumvention* prohibitions apply only to access controls. 17 U.S.C. § 1201(a)-(b); *see also* 1998 Senate Judiciary Report at 11 ("there is no prohibition on conduct in 1201(b) akin to the prohibition on circumvention conduct in 1201(a)(1)").

| 17 U.S.C. § 1201 | Circumvention Prohibition? | Trafficking Prohibition? |
|---|---|---|
| Access Controls | Yes § 1201(a)(1) | Yes § 1201(a)(2) |
| Copy Controls | No | Yes § 1201(b) |

U.S. Copyright Office, *Section 1201 of Title 17: A Report of the Register of Copyrights*, at 6 (emphasis added in red).

The DMCA permits the circumvention of copy controls for good reason. Traditional copyright infringement provisions already protect the copyright owner's exclusive rights, including the right to make copies. 17 U.S.C. §§ 106, 501. And unlike DMCA claims, copyright infringement claims are susceptible to the fair use defense. 17 U.S.C. § 107; *see also Hattler*, 2017 WL 11634742, at *7. As the Supreme Court has explained, fair use is "necessary to fulfill copyright's very purpose '[t]o promote the Progress of Science and useful Arts[.]'" *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994) (quoting U.S. Const., Art. I, § 8, cl. 8). If the DMCA prohibited the circumvention of copy controls, it would impair copying of a copyrighted work that was otherwise lawful as a fair use. *See* NII Copyright Protection Act of 1995: Hearing before Subcomm. On Courts and Intell. Prop., pt. 2 at 81, 104th Cong. 380 (1996) (urging Congress to "protect the customary and reasonable fair use rights of consumers") (Statement of Chairman Gary L. Shapiro,

Chairman, Home recording Rights Coalition & President, Consumer Electronics Manufacturers Association), pt. 2 at 432 (warning that "any 'anti-circumvention' provision must be carefully drafted so as not to prevent legitimate activities") (Statement of Members of the Digital Future Coalition on H.R. 2441).

Thus, "Congress sought to prohibit certain efforts to unlawfully circumvent technologies, while at the same time preserving users' rights of fair use." *NNG, KFT. v. AVA Enters., Inc.*, No. 2:14-CV-00220 (ODW)(AJW), 2015 WL 5442725, at *2 (C.D. Cal. July 8, 2015) (*quoting United States v. Elcom Ltd.,* 203 F. Supp. 2d 1111, 1119 (N.D. Cal. 2002)). "Since copying of a work may be a fair use under appropriate circumstances, Section 1201 does not prohibit the act of circumventing a technological measure that prevents copying." 1998 USCO DMCA Summary at 4. Congress expressed the same point in the statute itself, stating "[n]othing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement, including fair use, under this title." 17 U.S.C. § 1201(c)(1).

Without this limitation, those who wish to download YouTube videos in order to make fair use of them would be *permitted* to do so by the law of copyright infringement, but *prohibited* from doing so by Section 1201. To see the importance of this limitation, one need look no further than Plaintiff TEI and its owners, Ethan and Hila Klein. The Complaint alleges that the Kleins "helped define what constitutes fair use reaction videos." CAC ¶ 19. "Reaction videos" result from downloading and editing other people's YouTube videos, and interspersing short segments of another's work with reactions, including criticism and commentary. Some of the Kleins' reaction videos have been accused of copyright infringement, but have been adjudged to be fair use. *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 48 (S.D.N.Y. 2017) (granting summary judgment of fair use to TEI's owners where their YouTube videos included parts of Hosseinzadeh's YouTube video that they had downloaded). If

DEFENDANT'S MOTION TO DISMISS PLTFS'          17
CONSOLIDATED CLASS ACTION COMPLAINT

Section 1201 had prohibited downloading YouTube videos, the Kleins' fair uses would not have been possible.

In sum, under this statutory scheme, section 1201(a)(1)'s prohibition on circumventing access controls narrowly applies to technological measures restricting access to a copyrighted work, but does not apply to technological measures that "permit access to copyrighted work, but restrict copying," such as download restrictions for streaming media. *Hattler*, 2017 WL 11634742, at *8 (granting motion to dismiss § 1201(a) claim based on downloading works available for streaming). Instead, the proper claim to bring for circumvention of a copy control is a claim for copyright infringement. *MDY Indus., LLC v. Blizzard Ent., Inc.,* 629 F.3d 928, 945 (9th Cir. 2010) (explaining §1201 "does not prohibit circumvention" of a copy control, "because such conduct was already outlawed as copyright infringement").

## IV.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is warranted where "[a] complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). In evaluating the sufficiency of a pleading, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049, 1055 (9th Cir. 2008) (internal citations omitted). A plaintiff must do more than offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citation omitted). Rather, the complaint must plead enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To that end, the complaint must also "provide some notice as to when the challenged conduct allegedly occurred" sufficient to "put[] defendant on

DEFENDANT'S MOTION TO DISMISS PLTFS'       18
CONSOLIDATED CLASS ACTION COMPLAINT

notice of the time frame in question." *Baldain v. Am. Home Mortg. Serv. Inc.,* No. CIV S–09–0931 LKK/GGH, 2010 WL 56143 at *5 (E.D. Cal. Jan. 5, 2010) (quotation omitted).

## V. ARGUMENT

Section 1201(a)(1) provides that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under [the Copyright Act]." 17 U.S.C. § 1201(a)(1). To state a claim under Section 1201(a)(1), a plaintiff must plausibly allege both (1) a technological measure effectively controls access to the work, *i.e.*, an "access control," and (2) that the defendant circumvented that access control. *Id.*; *MDY Indus.*, 629 F.3d at 944. Here, Plaintiffs admit that their audiovisual works are freely available on YouTube but contest Snap's ability to download a copy of those works; Plaintiffs thus allege circumvention of *copy* controls (rather than access controls), which does not violate Section 1201.

### A. Plaintiffs' Claims Fail Because Their Works Are Freely Accessible.

Plaintiffs fail to plead the first element of their § 1201(a) claim because they do not allege any access control prevents the public from freely viewing Plaintiffs' works. The DMCA defines an access control as "a technological measure" that "in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to **gain access to** the work." § 1201(a)(3)(B) (emphasis added). Put differently, for a technological measure to qualify as an access control, a user must encounter and satisfy that measure to obtain access to or perceive the copyrighted expression. *See MDY Indus,* 629 F.3d at 952 ("Since a player need not encounter Warden to access WoW's individual non-literal elements, Warden does not effectively control access to those elements."). Additionally, a technological measure does not "effectively" control access to the work, if it otherwise leaves the work in question available to the public. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir.

2004) (finding § 1201(a)(2) "does not naturally extend to a technological measure that restricts one form of access but leaves another route wide open").

Here, Plaintiffs concede that users have access to "watch and listen" to YouTube content for free. *E.g.*, CAC ¶ 2 ("YouTube allows the public to view audiovisual works only through controlled streaming"); ¶ 34 (noting that the public "can watch and listen to [Plaintiffs'] videos for free"), ¶ 36 ("YouTube permits members of the public to view audiovisual works through its platform."). While Plaintiffs assert this viewing occurs "through the authorized playback mechanism" and "through a controlled streaming architecture," Plaintiffs do not allege that users encounter any technological measure before they are able to perceive the works—no paywall, password, authentication, nor any other barrier. CAC ¶¶ 34, 38. Plaintiffs further concede that by uploading these videos and agreeing with YouTube's terms of service, Plaintiffs intended to freely give the public access to their audiovisual works on the YouTube platform. CAC. ¶ 15 (admitting Plaintiffs' content is "intended for streaming on YouTube"), ¶ 32 (acknowledging that Plaintiffs "uploaded" the content at issue "onto YouTube's video sharing platform"); ¶¶ 67-68 (under YouTube's Terms of Service, Plaintiffs granted a license "to other users of YouTube to access content through YouTube's services"). Indeed, Plaintiffs derive value from their works by allowing others to freely stream their works on YouTube's platform. CAC ¶¶ 18, 21, 23, 69. This free access has gained Plaintiffs "over 4 billion views." CAC ¶ 17; *see also id.* ¶ 20 ("hundreds of millions of views"), ¶ 22 ("millions of views").

The public availability of Plaintiffs' works is fatal for Plaintiffs' § 1201 claim. In *Hattler v. Ashton*, plaintiff alleged that defendants violated § 1201(a)(1)(A) when they downloaded plaintiff's audiovisual works by circumventing technological protections on websites where the works were available for streaming. 2017 WL 11634742, at *6-7. Judge Kronstadt granted defendants' motion to dismiss, reasoning that "where § 1201(a)(1) refers to technological measure[s] that control 'access' to a

DEFENDANT'S MOTION TO DISMISS PLTFS'     20
CONSOLIDATED CLASS ACTION COMPLAINT

protected work, that section should be interpreted narrowly to exclude technologies that permit access to copyrighted work, but restrict copying." *Id.* at *8. Similarly, in *Couponcabin LLC v. Savings.com, Inc.*, plaintiff alleged that defendant had scraped content about coupon offers from plaintiff's public website in violation of the DMCA. No. 2:14-CV-39-TLS, 2016 WL 3181826, at *1 (N.D. Ind. June 8, 2016). Judge Springmann granted defendants' motion to dismiss, reasoning that plaintiff had not sufficiently pled that "a copyrighted work was 'effectively controlled' by a technological measure," including because "its website remains accessible to users of servers and/or internet service providers that have not been blocked by the Plaintiff's technology." *Id.* at *6.

Likewise, in *Lasica v. American Online, Inc.*, Judge Wu issued a tentative ruling that plaintiff's § 1201(b)(1) claim was subject to dismissal with prejudice, because "Plaintiff provided access to the Photograph—to Defendant as well as the general public—through Flickr.com." No. 15-cv-4230-GW(FFMx), 2015 WL 12791495, at *4 (C.D. Cal. Sept. 3, 2015). Judge Wu's reasoning for this § 1201(b)(1) claim is persuasive authority in this § 1201(a) case. He explained, "a person who engages in prohibited usage of a copyrighted work to which he has lawful access does not fall afoul of any provision of Section 1201." *Id.* (quoting *Ass'n for Info. Media & Equip. v. Regents of the Univ. of California*, No. 2:10–CV–09378–CBM, 2012 WL 7683452, at *9 (C.D. Cal. Nov. 20, 2012) (quoting Nimmer on Copyright § 12A.03[D][3])).[5] Because Plaintiffs affirmatively allege that their audiovisual works are freely accessible online—just like the streaming videos in *Hattler*, the coupons in *Couponcabin*, and the photograph in *Lasica*—this Court should dismiss Plaintiffs' § 1201(a) claim. *See* CAC ¶¶ 2, 15.

---

[5] Nimmer further explained that this discussion of the usage of a copyrighted work "should not be confounded with usage of a circumvention device; it is exploitation of the copyrighted work itself that is at issue." Nimmer on Copyright § 12A.03 [D][3] & n.147.

*Disney Enterprises, Inc. v. VidAngel, Inc.* provides an informative contrast to the situation here. 869 F.3d at 863–65. In *VidAngel*, the Ninth Circuit evaluated how the DMCA applied to VidAngel's use of a software program to decrypt DVDs and Blu-Ray Discs—removing the encryption that restricts users from viewing the works without an authorized player and that prevents users from copying or manipulating the underlying digital files. *Id.* at 853. The Ninth Circuit reasoned that these encryption methods are access controls because without an authorized DVD or Blu-Ray player (which contains the required decryption key), purchasers of the DVDs or Blu-Rays cannot view the movies that they purchased. *Id.* at 863-65. This contrasts with the facts here, where the Plaintiffs' videos are otherwise available without consumers needing to purchase any specific tools or to apply any other information, process, or treatment to view the works. Per Plaintiffs' allegations, YouTube's technological measures do not prevent streaming outright; instead, they protect the underlying media files. *See, e.g.*, CAC ¶¶ 2, 39. This Court should dismiss Plaintiffs' claims because unlike the controls in *VidAngel*, which required the user to already possess an authorized DVD or Blu-Ray Player containing the required decryption key to access the audio-visual content, the technological controls alleged here do not restrict access to authorized users, but instead grant free access to Plaintiffs' streaming videos on YouTube.

**B.      Plaintiffs' Claims Fail Because They Allege Circumvention of YouTube's Copy Controls—not Access Controls.**

By targeting Snap's alleged downloading of their works, Plaintiffs allege circumvention of copy controls, rather than access controls. *See* ¶ 35 ("To enforce its prohibitions on downloading content, YouTube uses technological processes and tools to detect and block access to files for unauthorized downloading."), ¶ 73 (discussing limitations to YouTube's "'*download*' option," including that "the audiovisual files cannot be transferred to any other device, but remain only for streaming on the app) (emphasis added), ¶ 11 (alleging plaintiffs' works have been

DEFENDANT'S MOTION TO DISMISS PLTFS'          22
CONSOLIDATED CLASS ACTION COMPLAINT

"unlawfully *copied*") (emphasis added).[6] Plaintiffs do not allege any technology that requires the application of information, or a process, or treatment to watch their videos. Instead, Plaintiffs allege Snap circumvented five technological measures that YouTube "implemented in its effort to impede the *downloading* of audiovisual content." CAC ¶ 76 (emphasis added); *see also* ¶ 35 (alleging YouTube uses these "technological processes and tools" in order "[t]o enforce its prohibitions on downloading content"). By targeting Snap's alleged efforts to download videos, Plaintiffs allege the very fact pattern courts have carved out of § 1201(a)(1), namely, where access is permitted but copying restricted. § 1201(a)-(b).

### 1.    Rolling Cipher

The rolling cipher is not an access control because it does not do anything to prevent anyone from watching a YouTube video.  Plaintiffs allege that the rolling cipher, "withhold[s] a usable file location unless the requesting client can transform an obfuscated signature parameter." CAC ¶¶ 50, 99. Plaintiffs further allege: "YouTube maintains two different URLs for any given video: the page URL, visible to the user, is for the web page where the video playback occurs, and the file URL, not visible to the user, is for the video file itself that is played within the page." *Id.* ¶ 51. Critically, these two URLs do not correspond to two different videos. Instead, when a user visits the page URL to stream the work, that web page includes instructions that cause the user's browser to access the file URL and show the video on the web page. *Id.* Plaintiffs allege that the "rolling cipher" acts as a "digital lock,"

---

[6] Alongside their allegations that Snap downloaded and copied their works, Plaintiffs mix in allegations that Snap "accessed" their works. *E.g.*, CAC ¶ 86 (claiming Defendant "triggered at least 100 million separate acts of unauthorized access and copying"). But Plaintiffs' allegations repeatedly affirm that this case does not concern Snap's ability to view or watch the works, but rather Snap's alleged efforts to download them. *E.g.*, CAC ¶ 1 (alleging Snap "unlawfully circumventing technological protection measures to access and scrape millions of copyrighted videos"), ¶ 51 (describing that the rolling cipher TPM "inhibits access to the underlying audiovisual files for the purposes of any downloading, copying, or distribution of the audiovisual content"); ¶ 97 (alleging Snap "did not simply access and download th[e Plaintiffs'] files").

DEFENDANT'S MOTION TO DISMISS PLTFS'       23
CONSOLIDATED CLASS ACTION COMPLAINT

requiring the user's system to provide the "changing" code. CAC ¶¶ 50-52. But unlike locks that actually control access to anything, this "lock" always has its key attached. A keypad lock with "the code 12345" or "the code = 12000 + 345" written on it might be a "lock" in some sense of the word, but it does not effectively control access to anything in the ordinary course of operation.

Plaintiffs allege that YouTube's rolling cipher (1) "impedes an ordinary user from creating a permanent, unrestricted download of audiovisual content made available on YouTube only for streaming." *Id.* ¶ 51. The rolling cipher does *not* impede an ordinary user from viewing the work, since it tells the user's browser how to calculate the video-file URL for the video, which then streams the video.

Plaintiffs allege that the rolling cipher (1) has "proprietary logic" and that the "file URL" is not "visible" to an "ordinary user." CAC ¶¶ 50-51. However, the user's browser still receives all the information needed to stream the file. While an "ordinary user," *id.* ¶ 51, may simply view the web page as rendered and does not know how to read the publicly available computer code in the web page itself, sophisticated users of an ordinary web browser can obtain the URL for the underlying file regardless of the rolling cipher. In other words, Plaintiffs do not allege that the rolling cipher's "proprietary logic" is needed to read the "file URL;" instead, they claim only that an "ordinary user" would not know how to find it. CAC ¶¶ 50-51. But nothing in the DMCA suggests that including access instructions in publicly available computer code qualifies as "a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). That is especially true here, where YouTube is designed to make videos freely accessible to anyone who wants to view them. *E.g.* CAC ¶ 2.

Additionally, Plaintiffs' allegations demonstrate that the rolling cipher is a copy control, not an access control. Plaintiffs admit that the rolling cipher "impedes an ordinary user from creating a permanent, unrestricted download of audiovisual

content." *Id.* ¶ 51 (explaining the rolling cipher "protect[s] against unauthorized downloading of underlying media files"); ¶ 99 (alleging the rolling cipher "protects the true media file URL"). They do not allege that the rolling cipher restricts users from accessing—that is, viewing or streaming—the video. Because Plaintiff's alleged rolling cipher is a copy control, not an access control, Snap's alleged circumvention of such a technological measure does not violate § 1201(a).

### 2.   IP Blocking and Rate Limiting

Plaintiffs' allegations regarding the second asserted technological measure of "IP blocking and rate limiting" do not plead an access control within the meaning of the DMCA. *See* CAC ¶ 52. Here, Plaintiffs allege that those who make too many requests will be IP blocked or rate limited. *Id.* ¶ 53 (explaining IP blocking and rate limiting are implemented when YouTube's system detects "excessive or abusive request patterns"); ¶ 54 (alleging that once thresholds for "the number and frequency of requests originating from individual IP addresses" are exceeded, "YouTube's servers cut off platform access from the offending IP address"). Plaintiffs admit this technological measure targets download activity and is a copy control, not an access control. *See id.* ¶ 35 ("YouTube monitors *downloading* activity and blocks IP addresses that make too many *download* attempts in a specified period.") (emphasis added). Thus, neither IP blocking nor rate limiting prevent the general public from accessing and viewing these works in the first instance. *See Hattler*, 2017 WL 11634742, at *7-8 (finding no circumvention of an access control when the works "were accessible for viewing to the general public").

Moreover, these measures do not fall within the statutory definition of an access control. Under 17 U.S.C. § 1201(a)(3)(B), "a technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, *requires the application of information, or a process or a treatment*, with the authority of the copyright owner, *to gain access to the work*." (emphasis added).

For IP blocking and rate limiting, Plaintiffs do not allege that YouTube requires the user to provide the right password or otherwise apply the right information "to gain access to the work." *Id.*; *see* CAC ¶¶ 53-55. Instead, YouTube's system blocks anyone who makes too many requests. Thus, this TPM simply functions as a "monitoring and blocking system," CAC ¶ 103, and not as a method by which "information, or a process or a treatment" is applied "with the authority of the copyright owner, to gain access to the work." § 1201(a)(3). For that reason, courts do not consider such measures to be access controls under Section 1201. *See, e.g.*, *CouponCabin*, 2016 WL 3181826, at *1, *6 (plaintiff did not plead an effective access control within the meaning of the DMCA's anti-circumvention provision where plaintiff alleged it implemented technological "safeguards," including IP monitoring blocks because the site remained publicly accessible and no technological gate, such as a password, restricted access). Because IP blocking and rate limiting is not an access control under the plain language of the DMCA, it cannot form a basis of Plaintiffs' § 1201(a) claim.

### 3. Session-Bound, Short Lived URLs

For the third asserted technological measure, session-bound, short-lived URLs, Plaintiffs have not alleged that Snap circumvented any access control. Plaintiffs allege that YouTube provides URLs that are "tied to a particular playback session and client context," such that "session-bound URLs expire automatically." CAC ¶¶ 56-57. According to Plaintiffs, this technological measure prevents someone who wants to download videos from "rely[ing] on a static link." *Id.* ¶ 57. While Plaintiffs assert that "these URLs expire and cannot be reused," *id.* ¶ 109, they have not alleged any facts asserting that Snap (or the public) could not use the URL to access or view the work without restriction *before* its expiration. Thus, this alleged technological measure is not an access control and does not restrict access to the work.

### 4.   CAPTCHA Challenges

Plaintiffs' allegations as to the fourth asserted technological measure, CAPTCHA challenges, similarly fail. Plaintiffs generally assert that "[w]hen traffic patterns indicate automated or suspicious activity, YouTube typically requires completion of a CAPTCHA challenge before allowing further requests to proceed." CAC ¶ 58. Again, Plaintiffs' allegations admit that Defendants initially had free access to the works to start—prior to any alleged "automated or suspicious" activity. *Id.* According to Plaintiffs, CAPTCHA challenges do not initially block a user's attempt to view a video and only appear in limited circumstances thereafter involving traffic patterns deemed "suspicious." *Id.* Thus, as discussed above, the CAPTCHA challenges do not block the public's access to the Works in the ordinary course of YouTube's operation.

Separately, Plaintiffs do not allege that any CAPTCHA challenge was triggered or overcome with respect to any of Plaintiffs' works, specifically. Instead, Plaintiffs allege that "[l]arge-scale scraping operations like Defendant's necessarily generate request patterns that trigger CAPTCHA challenges." *Id.* ¶ 59; *see also id.* ¶ 110 ("At scale, Defendant's automated activity would also trigger . . . CAPTCHA challenges"). This is insufficient to state a claim that YouTube prevented Snap from accessing any particular video using CAPTCHA challenges. *Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level.").

### 5.   Proof of Origin Tokens

Plaintiffs allege that the fifth asserted technological measure, "proof-of-origin tokens," "effectively controls access to copyrighted works by conditioning the delivery of audiovisual file data on cryptographic proof that the requester is operating within YouTube's authorized playback environment." CAC ¶ 65. But that does not meet the statutory definition because it does not condition access on "application of

information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3). Anyone can watch Plaintiffs' videos, and they don't need to have any kind of password or encryption key when they arrive at the YouTube web page. The "proof-of-origin token" is alleged to be something that, like the "rolling cipher," is "generated dynamically" by the YouTube web page that is running in the user's browser. CAC ¶ 62. Stated differently, what Plaintiffs label "YouTube's authorized playback environment" *is* the YouTube web page where anyone can watch Plaintiffs' videos, and that web page comes with everything the user's browser needs to show the user the video. As with the "rolling cipher," this is at best like a keypad lock that says "the code = 12000 + 345" on it. It may make downloading harder, but it does not effectively control access to anything, because anyone can watch Plaintiffs' YouTube videos.

### C. Plaintiffs Do Not Allege Sufficient Information on the Timing of YouTube's Technological Protections or Snap's Alleged Downloading.

"[A] complaint must provide some notice as to when the challenged conduct allegedly occurred," sufficient to put the defendant "on notice of the time frame in question." *Baldain,* 2010 WL 56143 at *5; *see also Johnson v. Rehman*, No. 2:14-CV-01454-GEB-AC, 2014 WL 4986688, at *2 (E.D. Cal. Oct. 6, 2014). In particular, under the DMCA, a plaintiff must plead sufficient information on the technological measures in place at the time of the alleged circumvention. *See TD Ameritrade, Inc. v. Matthews*, No 3:16-CV-00136-SLG, 2018 WL 3451463, at *6 (D. Alaska July 16, 2018) (dismissing § 1201(a) claim where Plaintiff "fail[ed] to specifically allege what technological measure(s), if any, [Defendant] had on his hard drive," and which thus applied, "at the time of the alleged cyber attack"). Here, while Plaintiffs have described a variety of technological measures, Plaintiffs have not alleged any information about when YouTube implemented those measures—let alone whether

they were in place at the time Snap accessed the videos. Accordingly, Plaintiffs have failed to plead facts sufficient to state a claim with respect to either identifying the alleged technological measure or Snap's accused conduct.

In sum, Plaintiffs have failed to plead any circumvention of a technological measure controlling access to their works, which they have made publicly available on YouTube. Instead, while paying lip service to the "access," Plaintiffs allegations target unauthorized copying, which is not prohibited under § 1201(a)(1)(A). CAC ¶ 5 (describing Snap's offending conduct as "accessing, scraping and downloading those files"), ¶ 35 (describing "prohibitions on downloading content"), ¶ 50 ("YouTube controls access to the underlying media file"), ¶ 73 (discussing limitations to the "'download' option" and explaining that "the audiovisual files cannot be transferred to any other device, but remain only for streaming on the app").

## VI.    CONCLUSION

Section 1201 does not prohibit the circumvention of copy controls because such a prohibition would prevent the exact sort of downloading for fair-use purposes that is alleged to have happened here. If Plaintiffs want to challenge whether downloading their videos was fair use, they can bring a claim for copyright infringement and litigate that issue. The law does not, however, allow them to sidestep that issue.

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety for failure to state a claim against Snap.

Dated: May 11, 2026                         **MORRISON & FOERSTER** LLP


By:  */s/ Joseph C. Gratz*
      JOSEPH C. GRATZ
      *Attorney for Defendant*
      SNAP INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Joseph C. Gratz, certify that the Memoranda of Points and Authorities in the foregoing Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint fully complies with Local Rule 11.6 and Judge Birotte's Standing Order for Civil Cases ¶ 12(c), does not exceed 25 pages, excluding the parts of the brief exempted, and complies with the typeface requirements because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word (the same program used to calculate the word count).

*/s/ Joseph C. Gratz*
Joseph C. Gratz

*Attorney for Defendant*
SNAP INC.

DEFENDANT'S MOTION TO DISMISS PLTFS'     30
CONSOLIDATED CLASS ACTION COMPLAINT

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on May 11, 2026.

*/s/ Joseph C. Gratz*
Joseph C. Gratz